Tilghman C. J.
The assignees of Otis claim a preference of payment out of the funds of Wylie in the hands of the garnishees in this suit, and the question is to whom *224 is the preference to be given. The assignees of Otis rely on the 65th section of the act of congress', “ to regulate “the collection of duties on imports and tonnage,” (passed 2d March, 1799,) by which it is-enacted, that “in all “ cases of insolvency, or where any estate in the hands of exe- “ cutors, administrators, or assignees, shall be insufficient to pay all the debts due from the deceased, the debt or debts “ due to the United States, oh any such bond or bonds, shall “ be first satisfied, and any executor, administrator, or assig- “ nee,, or other person, who shall pay any debt due by the “ person, or estate, from whom,-or for’which, they are ac£ingr “previous to the debt or debts due to the United'States “being first duly paid or satisfied, shall become answerable “ in their own person and estate,” fkc. arid iii a subsequent patt of the same section it is declared, “that the case's' of' in- “ solvency before mentioned, shall be deeined to'"' extend a's “well to cases in which a debtor, not having sufficient p'ro- “ perty to pay his debts, shall have made a voluntary assign“ment thereof for the benefit of his creditors, or in which “ the estate and 'effects of an absconding, concealed, hr absent “ debtor shall have been attached by process of law, as' to “ cases in which an act of legal bankruptcy shall have been “committed.” The assignment of 19th August, 1808, falls directly within the law. This is not disputed, but it is contended on the part of the plaintiff, that the United States were entitled to nb preference until the date of the assignment, prior to which he had obtained a lien on the property in the hands of the garnishees. - It is to be considered' then what kind of lien had been obtained by the attachment. That .is the -point on which the cause turns. Ari attachment transfers no property to the plaintiff, Its object is to compel the appearance of the defendant. That being obtained by entry of special bail, the attachment is dissolved. So likewise it would be dissolved by the death of the defendant before judgment, though no bail were entered. And- even where it is not dissolved, the goods are to remain in the hands of the garnishee on his giving security to answer their value, and after such security given the property may be transferred to a stranger. The lien of the plaintiff, therefore, is of a special nature, it may eventually become absolute, but is liable to be defeated by various circumstances, without payment of his debt. In the present case, the property attached consisted *225 'chiefly of debts due -to the defendant, so that no change of .possession took place in consequence of the attachment. The case of Thelusson v. Smith, lately decided in the Circuit Court of the United States for this district, was not so strong as the present in favour of the United States. It was held in that case, that after a general assignment by an insolvent debtor, the debt of the United States should be paid in preference to a judgment, prior to.the assignment, which bound the debtor’s land, but on which no execution had issued. Now a judgment creates a lien on land, which no act of the defendant can avoid, whereas the lien of an attachment may be avoided by various ways before mentioned. I am therefore of opinion, that the attachment must give way to the debt of the United States. The plaintiff’s counsel set up another objection, which is but formal. They say, that by the act of congress, the United States should look to the general assignees of their debtor, and not to the particular persons in whose hands his property may chance to be found. But it is not clear, that the general assignees could recover this property, and if the claim of the United States were not brought forward before the garnishees paid it over to the plaintiffs difficulties might arise. Besides, the objection is not well founded even in strict construction, because the act of congress does not limit the United States to a payment from the assignees. The words are, u any executor, adminis- “ trator, assignee, or other person,’'’ which comprehend the garnishees in an attachment, and no doubt were so intended, as attachments are expressly mentioned afterwards; I am therefore of opinion, that the District Court erred in charging the jury to find for th.e plaintiff. The judgment must be reversed, and a venire facias, de novo be awarded.
Yentes J.
I have heretofore expressed my sentiments, on .the constitutionality of the acts of congress, giving in certain instances to the United States a preference of payment of their debts over the debts due to individuals. I have nothing new to add on that subject. The question here is, who, under the circumstances of this case, as disclosed by the record, are entitled to priority of payment,, out of the funds attached in thé hands of the garnishees ? The great leading features of the case are short. (Here his Honor briefly stated the case.) Thus it appears, the bonds executed to the United States preceded *226 the issuing of the foreign attachment; the general assignment preceded the interlocutory judgment; and the payment of the bonds and surrender of them to the surety, preceded the scire facias. Shall then the laying of this attachment defeat the claim of the assignees of' Otis, who afterwards took the benefit of the insolvent law of New Tork ?
It is not denied, that the assignees of Otis are entitled to any preference that belonged to the United States, at the 'time Otis, as surety, paid off the bonds due to the United States, or to such right as the United States would now he entitled to if the bonds had not been paid, unless Otis or his representatives have done some act prejudicing their right; in pursuance of the express provisions of the 65th section of the act of congress of 2d 'March, 1799. I have no doubt that this assignment with the attendant circumstances falls within the insolvency specially described in the section I 'have cited. It transferred all the property of Wylie, real, personal, and mixed. In the language of Chief Justice Marshall, in United States v. Hove et al. (3 Cranch, 90, 91.) “ it u was such a general divestment of property as would in fact “ be equivalent to insolvency in its technical sense.” But it has been objected that the assignment could have no legal Operation on the effects in question, inasmuch as they were bound by the attachment previously laid upon them in the hands of the garnishees. We must bear in mind, that the debt to the' United States, for custom house duties, existed previously to the issuing of the attachment, although payable at future days. The President of the District Court expressly charged the jury, that they did not reject the claim of the assignees of Otis, because the bonds were not due. They held, that the foreign attachment, when -laid, transferred the possession and the defendant’s right of possession, and placed the pi'operty in the custody of the law, to answer the judgment of the Court. In Thelusson v. Smith, at last April Term in the Circuit Court of the -United States held for this district, it was determined, that a right of preference of payment in the United States accruing on a particular day, in consequence of an insolvency krone of the-cases specified in the act of congress, would Cut out a -prior judgment creditor, and defeat his Incumbrance on the lands of the debtor where no execution had beeh executed, -i see no reason to doubt the correctness of this -decision, and it appears to me to *227 establish an important principle which must necessarily have great effect in the‘present question. The Distinct Court thought, that the operation of a foreign attachment differed even from a judgment which created only a general lien, the, possession of the land was not changed thereby, nor the property put into the custody of the law, while op the other hand the attachment proteets the funds-attached against the preference claimed. I cannot reconcile1 my mind-to the solidity of this distinction. I consider a judgment, whereon no execution has been executed (independently of the 31st section of the Bankrupt Act of the United States of 4th April, 1800, which was afterwards repealed by the act of 19th December, 1803,) as a much' stronger case against the preference pow claimed,- than a foreign attachment. A judgment -operates absolutely against the lands of the defendant within the'jurisdiction of-the Court, as a binding incumbrance, which can -be defeated only by payment of the debt and costs, or the sale of the lands’by the proper officer. But the lien of a foreign attachment may be- dissolved either by the entry of special bail, or by the death of the defendant in the suit. In all events I can have no conception, that an attachment creditor can stand in a more eligible situation as to goods attached, than a judgment creditor- as to lands.’ A later judgment cannot take precedence of an earlier one, unless it be so provided'by the terms of positive-law in certain, instances. I freely admit, that-in several of our books it is said, that a plaintiff in a foreign attachment has a lien on the property attached for the payment of his demand, but it is evident, that this lien is of a qualified or conditional character, liable to be defeated by? the entry of special bail, or the death of the'debtor. -Our old attachment law of 1705, is grounded on the custom of London,'an& a few trading .towns in England, merely to compel ap appearance, to use the-language of the preamble,"d so that the effects-of persops ab- “ senting shall be equally liable with those of persons dwelling on the spot, to make restitution, &c.” The goods, monies, or effects attached are to remain in the officer^ power, and to be by him secured in order to answer and abide ‘the judgment, unless the garnishee will give security. Few instances occur of such security being demanded, and are confined to-garnishees who are supposed to be in doubtful .circumstances. I agree with the counsel of the plaintiff ill- *228 error, thgt where such security is given, the attachment is no more a lien ori the goods attached, than on goods distrained for rent upon giving a bond and suing out a replevin. The garnishee in all events is only answerable for the fair value of the goods attached, and may discharge himself by delivering them up to the proper officer. The 2d section of the act of 28th September, 1789, supposes the goods to remain in the hands of the garnishee on his giving security therefor. In the present case the effects attached consisted of mere Choses in Action, comprehending nine thousand two hundred and forty-seven dollars and ninety-two cents due on four-policies of insurance from the Marine Insurance Company, and one thousand six hundred and ninety-eight dollars and ninety-one cents due .from Messrs. Willing and Francis, the proceeds of wine sold for Wylie, so that unless the garnishees had thought proper to lodge their balances in Court, on the attachment being served, the money due from them was not susceptible of a change of possession; in fact, it was not then payable. I see no just ground to suppose, that the copy of the Nexo Fork record is-erroneous. The clerk would be swayed by no undue interested motives to make out an untrue copy. We are bound to give full faith and credit to that record. It has been Urged, that the acceptance of the assignment made on the 27th February, 1808, by Wylie to the United States, was a waver of the former lien, and that the assignees of Otis are concluded thereby. It does not appear to me to have that operation. At most it was an ineffectual attempt to secure the custom house duties and failed. It has been properly asked, shall this deed be valid as to one purpose and invalid as to others? I repeat the expressions of Marshall C. J. in Harrison v. Storry, et al. (5 Cranch, 300.) “ the priority of the United States is to be maintained unless “ some of the creditors (of Wylie) can shew a title to the pro- ' “perty, anterior to the time when this priority attached:” In ihy apprehension this has not been done, inasmuch as no absolute specijlc lien on the effects was acquired under the attachment. It has been further contended, that the assignees of Otis can only claim these monies under, and through, the assignees of Wylie, and that they therefore must take them cum onere. But it certainly was competent to the garnishees, under their plea of nulla bona, to shew any facts or circumstance's conducing to prove they had no effects in their hands *229 subject to the attachment. In the District Court .they stood in a defensive attitude to repel the demand of the defendant in error. I cannot conceive a case of legal preference secured to the .United States, which cannot be carried into effect in some mode or other either in a court of law or equity. Be that, however,, as it may, the only, question here is, whether Bleeker was entitled to recover in this suit. — I .answer in the negative.
Upon the whole matter, I am of opinion, that the judgment of the District Court be reversed, and a venire facias de novo be awarded.
Brackenridge J. was absent in consequence of sickness, and- gave no opinion.
Judgment reversed, and a venire facias de novo awarded.